# IN THE UNITED STATES BANKRUPTY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:                                                      In Proceedings
                                                             Under Chapter 7

DENE SHAEFFER,

                                                             Case No. 17-30052

          Debtor.

## OPINION

This matter is before the Court on the Respondent Mikol Rosenbalm's ("Respondent") Motion to Assess Attorney's Fees and Expenses. The Respondent seeks an Order sanctioning Dene Schaeffer ("Debtor") and requiring her to pay Respondent's reasonable attorney's fees and expenses, pursuant to Rule 11 of the Federal Rules of Civil Procedure. Based on the Respondent's Motion, Memorandum in Support of the Motion, the Debtor's Objection, and Respondent's *pro se* Reply, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

(1)     The Debtor and Respondent entered into a lease agreement for June 12, 2016 to June 30, 2018 with a payment of $2,000.00 per month as rent for property located at 230 Shawnee Court, O'Fallon, Illinois.

(2)     Due to the Debtor's failure to pay rent, a judgment was entered on December 12, 2016 in St. Clair County Illinois awarding the Respondent costs and fees totaling $7,231.90 and the possession of the real property. The Order was stayed until January 1, 2017 to allow the Debtor sufficient time to move out of the residence.

(3)     The Debtor remained at the residence past January 1, 2017 and filed a Voluntary Chapter 7 Petition on January 20, 2017.

(4) The Debtor scheduled landlords Mikol and David Rosenbalm as having a nonpriority unsecured claim for $8,000, and listed her current address as 230 Shawnee Court, O'Fallon, Illinois. Along with the petition, the Debtor filed an Official Form 101A, listing Respondent as the landlord and certifying that the Debtor had the right to stay in the residence by paying the landlord the entire delinquent amount.

(5) On January 23, 2017, the Clerk of the Bankruptcy Court made a docket entry indicating that no monetary deposit had been made with the Clerk.

(6) The Respondent filed a Motion for Relief from Stay in an attempt to proceed in enforcing the Forcible Entry and Detainer action from St. Clair County. The Motion was granted on February 14, 2017 with execution of the Order stayed until February 23, 2017.

(7) On February 27, 2017, the Debtor moved out of the property.

(8) The Debtor received her discharge on May 9, 2017, and the case was closed on May 24, 2017.

(9) On August 10, 2017, the Debtor signed a lease agreement with realtor Rob Cole from Judy Dempsey Realty for property located at 1141 Lazy Hollow Drive, O'Fallon, Illinois. On the next day, Rob Cole terminated the lease due to the Debtor providing falsified information on the lease application.

(10) Thereafter, the Debtor enrolled her children into O'Fallon School District 90 using the address at Lazy Hollow Drive after the termination of the lease.

(11) On October 20, 2017, the Debtor filed a Motion to Reopen her Chapter 7 Bankruptcy case in order to file an adversary proceeding against the Respondent for violation of the order of discharge.

(12) The case was reopened, and the Debtor filed a Motion for Contempt for Violation of the Discharge Injunction against the Respondent on November 13, 2017 alleging, amongst other

things, "Rosenbalm contacted Rob Cole to purposely cause Debtor to lose her new lease through Judy Dempsey Realty," which caused the Debtor and her minor children "to be suddenly without a residence and forcing them to temporarily live in a hotel." In addition, Debtor alleged that Respondent sent Debtor a text message stating, "Rob and I are going to get your nigger kids." The Debtor alleges the Respondent violated the discharge injunction by continuously harassing and threatening the Debtor by taking actions to abuse and punish the Debtor and her minor children and by threatening lawsuits to collect the debt after the bankruptcy had concluded and a discharge order was entered.

(13)    On February 8, 2017, the Debtor filed a Request for Admission of Facts asking the Respondent to admit various alleged facts from the Motion, including whether the Respondent provided information to Rob Cole in an attempt to terminate her lease and whether the Respondent sent the racially derogatory text messages.

(14)    In the Respondent's Response to Request for Admission of Facts, she denies contacting Rob Cole, but states that Mr. Cole contacted the Respondent concerning a background check on a lease application from the Debtor. The Respondent states that she provided Mr. Cole with a copy of the eviction order and answered questions he had regarding the Debtor. The Respondent denies using any racial slurs in her text message sent to the Debtor and states she has never threatened the Debtor's children.

(15)    On February 23, 2018, the Respondent served the Debtor with a Request for Production that included a request for the Debtor to produce any and all cell phones and other electronic equipment on which she either forwarded or received text messages from the Respondent.

3

(16) On March 13, 2018, the Debtor filed an Exhibit List. Exhibit 1 is a photograph of a cell phone which shows a text message conversation with a phone number that the Debtor alleges is the Respondent's. The photo shows messages from the sender that state, "District 90s not private school fool. You and your fake lease..," "The community has you figured out," and "I'm filing suit against you this week. Just needed your bankruptcy to be final. Rob and I are going to get your nigger kids. Have a good day."

(17) An evidentiary hearing was set for March 20, 2018. Respondent's counsel filed a Motion to Continue on March 14, 2018 alleging that they were waiting on the Debtor to comply with Respondent's Interrogatories and Request for Production. The motion indicates that counsel for both parties had spoken and agreed that phone records showing the text messages between the parties were key in the matter. The Motion to Continue was granted.

(18) On April 30, 2018, a Motion to Compel/ Motion for Sanctions Pursuant to F.R.C.P. 37 was filed by Respondent's counsel. Numerous attempts were made requesting compliance with the Request for Production sent on February 23rd, including phone calls on March 6, 2018, March 8, 2018, April 25, 2018, and April 26, 2018 to Debtor's counsel and an email sent on April 27, 2018. The Respondent also filed a Notice/Demand to Inspect the Debtor's cell phone by a forensic I.T. Specialist retained by the Respondent.

(19) On May 25, 2018, the Respondent filed an Objection to the Motion for Determination of Contempt and Sanctions for Violation of Discharge alleging that the Debtor had made several false allegations in her motion against the Respondent. The Motion noted that the Debtor has used several alias names and has a history and pattern of deceit and dishonesty, in addition to felony convictions. The Respondent admitted that Rob Cole did contact her to follow up on a rental application by the Debtor, and she did answer questions by Rob Cole regarding the false

information the Debtor had provided on her lease. The Respondent denied forwarding the derogatory text messages alleged by the Debtor and asserted that the Debtor used a technique called "spoofing" to make it appear as if the Respondent had sent her the text messages. The Respondent alleges that either the Debtor made the text messages on her phone, used someone else's phone or had someone else forward the texts to make it appear that they had been sent by the Respondent.

(20)     An Order was entered on August 7, 2018 requiring the Respondent to retain a forensic IT specialist from Binary Intelligence to copy and/or duplicate the Debtor's phone via iCloud at an agreed upon time and place by the parties. Additionally, the Debtor was to make herself available for a deposition within 21 days after Binary Intelligence filed a report on the messages.

(21)     When counsel for both parties met at Benson Law Office on August 23, 2018, it was disclosed for the first time that the Debtor's phone was not backed up on an iCloud account and that she had changed phones. The Debtor displayed text messages on her new phone that had been sent between the Debtor and Respondent, and there were no messages that were racially inflammatory. The Respondent produced photographs taken of the Debtor's phone at this meeting to show that the alleged racial messages were not present. At the meeting, Binary Intelligence suggested that they may be able to get a backup of the phone's text messages through the Debtor's iTunes account on her home computer by having her bring the computer to her attorney's office and downloading the hard drive. The Debtor never brought the computer to be examined.

(22)     The Debtor's counsel withdrew on September 25, 2018, citing "irretrievably broken communication" between him and the Debtor.

(23)    On October 3, 2018, the Respondent filed a Motion to Strike the Motion for Contempt. Included as an exhibit were documents received from Rob Cole with Judy Dempsey Realty by Subpoena on August 22, 2018. One of the documents is a letter from Rob Cole to the Better Business Bureau stating that the reason for terminating the Debtor's lease was because the Debtor completed her application with false information. For example, the Debtor falsely represented that she lived at 234 Shawnee Court in O'Fallon, Illinois, when she never lived at this address. She stated that she had never been brought to court by a landlord, when she was actually evicted from the Rosenbalm's property. She provided incorrect landlord information and contact information. She provided a false social security number, stated she had never filed bankruptcy, and stated she had never broken a lease. Rob Cole's letter also states that the school board of O'Fallon District 90 was contacted because the Debtor untruthfully enrolled her children in District 90 as living at 1141 Lazy Hollow Drive in O'Fallon, Illinois by using a lease which was terminated due to falsified information. The Motion to Strike also indicated that the Debtor has used at least six names and has several felony convictions for theft and deception.

(24)    A hearing was held on January 15, 2019 on the Motion for Contempt and/or Sanctions and on the Motion to Strike.

(25)    The Debtor appeared *pro se* and had three witnesses: Patric Davis, Mikol Rosenbalm, and Dene Sheffer. Counsel for the Respondent had one witness, Mikol Rosenbalm.

(26)    When called to testify by the Debtor, Mikol Rosenbalm testified that she did not contact the Debtor's children's private school but did admit to contacting District 90 after speaking with Rob Cole, who informed her that the Debtor and her children were not living in the district. The Respondent denied sending any type of racially charged comments to the Debtor and demonstrated the "spoofing" method on her phone, whereby someone can have anyone send

6

messages and then alter the contact information to make it look like the messages are from a different person. The Respondent testified that she believes the Debtor altered a text message conversation by typing in the Respondent's phone number under the contact information to make it look like she had sent the racially charged messages.

(27)    In her testimony, the Debtor admitted to being convicted of two felonies for theft and deception in Missouri, one felony for theft and deception in Illinois. She also admitted that she has a felony charge pending in St. Clair County, Illinois.

(28)    The Debtor further testified that she did not provide Rob Cole with an incorrect address on her lease application, did not indicate that she had never filed for bankruptcy, was never asked if she had broken a lease before, and was not asked if she had ever been brought to court by another landlord. When presented with the Applicant's Questionnaire, which provided for all of this information and was signed by the Debtor, the Debtor responded that she had never seen the Questionnaire before.

(29)    The Debtor also testified that she never filed the Official Form 101 with the Clerk, despite her signature being on the form.

(30)    The Debtor testified that she paid rent for the months of January and February 2017 to the Respondent. When asked for confirmation of the payment, the Debtor was unable to provide any documentation showing proof of payment

(31)    The Debtor admitted that the Respondent incorrectly spelled her name on the lease, but that she signed the lease anyway without telling the Respondent that her name was spelled incorrectly.

(32)  The Court denied the Motion for Contempt and Sanctions for Violation of the Discharge Order. The Court held that there was no evidence of racial slurs presented, nor was there proof of any effort by the Respondent to collect a debt that was discharged.

(33)  Additionally, the Court found the Debtor to not be credible. She failed to correct her name on a lease, used several alias names, failed to disclose felonies on lease applications, and failed to disclose other issues with leases on her lease applications. The Court found Respondent to be a credible witness, evidenced in part by the fact that she was willing to pay $2,800 to Binary Intelligence in order to prove she did not send the text messages.

(34)  The Respondent's counsel asked for attorney's fees at the conclusion of the hearing and was granted 10 days to provide the court with authority as to the attorney fees.

(35)  On January 25, 2019, counsel filed the instant Motion to Assess Attorney's Fees and Expenses pursuant to F.R.C.P 11 and F.R.C.P 37.

(36)  The Debtor filed an Objection to the Motion on February 1, 2019, which does little to address the issue regarding attorney's fees. Instead, the Debtor attempts to reargue her Motion for Contempt with evidence that was not allowed at the hearing due to her failure to disclose the evidence prior to the date of the hearing.

(37)  The Respondent filed a *pro se* Reply in which she also attempts to relitigate the merits of the Motion.

## **DISCUSSION**

The Motion for Contempt and Sanctions by the Debtor was filed on the basis of a violation of a discharge injunction. Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset [a discharged debt] as a personal liability of the debtor…" 11 U.S.C. §524(a)(2).

The Debtor presented no evidence of any effort by the Respondent to collect a debt that was discharged. The Motion alleges that the Respondent violated the discharge injunction by harassing and threatening the Debtor, by taking actions to abuse and punish the Debtor and her minor children, and by threatening lawsuits to collect a debt after the Debtor's discharge. No evidence of any of these actions, however, was presented during the hearing.

Instead, the evidence showed that the Respondent filed a motion to lift the automatic stay and waited until the lift stay order was in effect before evicting the Debtor from the residence. The Respondent did not contact the Debtor until after the stay had been lifted. There were no text messages or communication produced showing harassment or threats by the Respondent. The Respondent did admit to calling School District 90, but the Debtor was unable to produce any type of evidence as to the subject matter of the phone call. In short, the Debtor failed to produce any evidence of an effort by the Respondent to collect a debt. Absent proof of such conduct, the Court concluded that Respondent did not violate the discharge injunction.

### **A. Violation of Rule 9011**

The Respondent has filed a Motion to Assess Attorney's Fees and Expenses pursuant to Rule 11 of the Federal Rules of Civil Procedure. Bankruptcy Rule 9011 is analogous. *In re Woodstock Assocs. I, Inc.*, 121 B.R. 238, 242 (Bankr. N.D. Ill. 1990). The burden of proof is on the moving party to prove that sanctions are warranted. *In re Standfield*, 152 B.R. 528, 534 (Bankr.N.D.Ill.1993*).*

Federal Rule of Bankruptcy Procedure 9011 provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances

9

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Bankr. P. 9011(b).

This Rule creates two grounds for the imposition of sanctions: (1) the "frivolousness clause," which looks to whether a party made a reasonable inquiry into both the facts and the law; and (2) the "improper purpose clause," which looks to whether a document was interposed for an illegitimate purpose, such as delay, harassment, or increasing the costs of litigation. *In re Kaliana*, 207 B.R. 597, 601 (Bankr. N.D. Ill. 1997).

The "frivolousness clause" requires inquiry into two points: (1) whether the party made a reasonable inquiry into the facts, and (2) whether the party made a reasonable investigation of the law. *Woodstock*, 121 B.R. at 242, *citing Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429 (7th Cir. 1987). A pleading is not well grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known by the attorney or party signing the document. *Id.* at 243.

The factual allegations contained in the Motion for Contempt are not well grounded in fact, nor did they have evidentiary support (or were they likely to have evidentiary support after a reasonable opportunity for further investigation or discovery). Specifically, while the Motion for Contempt asserts the Respondent contacted Rob Cole to purposely cause the Debtor to lose her new lease through Judy Dempsey Realty, the letter from Rob Cole to the Better Business Bureau clearly provides that the lease was terminated because the Debtor "intentionally omitted

and falsified information on her application." The Debtor testified that her lease with Rob Cole was terminated based on "new information" he had received. This led the Debtor to believe, and subsequently allege, that her lease was terminated because the Respondent personally contacted Rob Cole. The letter from Rob Cole provides several reasons why the lease was terminated, including the Debtor providing a false address on the lease, stating she had never been brought to court by a landlord, providing a social security number believed to be false, and stating on the new lease that she had never broken a lease.

A simple inquiry into what the "new information" was that caused Rob Cole to terminate the lease would have revealed the actual reason the lease was terminated. Instead, the Debtor alleges, and continues to advocate, that it was the Respondent who contacted Rob Cole and caused him to terminate the lease, when she had completed the entire lease application with false information. The Respondent testified she was contacted by Rob Cole as part of his due diligence to verify the Debtor's lease application. Therefore, this allegation is completely unsupported.

Additionally, the Debtor alleges in her Motion that the Respondent sent racially inflammatory comments concerning the Debtor's children. The Debtor failed to produce evidence of any such comments both before the hearing and during the hearing, despite numerous opportunities to do so. A Request for Production was sent to the Debtor on February 23, 2018, which included a request to produce any electronic equipment that included text messages from the Respondent. The Debtor did not comply with the request and did not respond to a follow-up letter. The Debtor did not provide any phone until August 23, 2018, after an Order was entered directing her to produce the phone. In the August meeting, the Respondent paid $2,800 to have a forensic technician from Binary Intelligence examine the phone. The Debtor appeared at the meeting and stated that she no longer had the phone containing the racial text

11

messages. Instead, the Debtor provided a new phone which did show the text message conversation between the Respondent and the Debtor, but the one message that was missing was the message that included the racial slur.

Prior to this meeting, the Debtor made representations that the phone containing the racial message was backed up onto an iCloud account. At the meeting, the Debtor stated for the first time that the phone containing the message was not backed up to iCloud. The Debtor had another chance to provide evidence of the messages when Binary Intelligence suggested that she bring her laptop into her attorney's office so that her iTunes account could be downloaded. However, the Debtor never followed through.

The Debtor has had ample opportunity to provide evidence of the alleged racial text messages on her cell phone and has failed to provide any type of proof. There has been no evidentiary support at all for the allegation that the Respondent sent the Debtor the racially derogatory text message.

Finally, the Debtor alleges that the Respondent caused her children to be removed from their school. Respondent testified that she did speak with someone at School District 90, but no evidence was presented verifying the subject matter of the phone call. The evidence did show, by way of Rob Cole's letter, that the Debtor enrolled her children into District 90 using the address of a residence on a terminated lease. The allegation that the Respondent caused the Debtor's children to be removed from school simply lacks evidentiary support.

The facts reveal that the Debtor's Motion for Contempt and Sanctions is utterly lacking in evidentiary support. The Debtor has been provided several opportunities to support her allegations throughout this case and has failed to do so, making the assertions baseless. Additionally, the Debtor has made it exceedingly difficult for the Respondent to obtain key

evidence related to this matter.   As a result, the Debtor's Motion violated Bankruptcy Rule 9011(b)(3).

The Court found that the testimony of the Respondent was credible, consistent and supported by related facts. The Debtor's testimony was not credible and not supported by the evidence. The Debtor was not cooperative in producing the most important piece of evidence the Debtor needed to support her case. Her lack of cooperation was evident through the discovery process and ultimately led to her counsel withdrawing. While suspicions and hunches may support a needed self-rationalization, they do not support this complaint.

### B. Sanctions Under Rule 9011

Under Bankruptcy Rule 9011(c), if this Court determines that subdivision (b) of that Rule has been violated, it may award sanctions against the offending attorneys, law firms and parties. Rule 9011(c) provides:

> If . . . the court determines that subdivision (b) has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
>
> [T]he sanction may consist of . . . an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Generally, sanctions fall wholly on the client when he or she has misled his attorney as to the facts or purpose of the proceeding. *Woodstock*, 121 B.R. at 243. The amount (and nature) of sanctions to be imposed is left to the discretion of the Court. *Id*. at 243.

Here, the Respondent has incurred attorney's fees in the amount of $8,000.00. The Respondent paid $2,800.00 to Binary Intelligence to examine her phone and iCloud account for text messages sent and received between the Respondent and Debtor, and has incurred traveling

expenses of $2,600.00 for two trips to East St. Louis for hearings in this Court. Based on the complete lack of evidence to support Debtor's allegations, the Court finds that sanctions pursuant to Rule 9011(c) are appropriate.

Accordingly, the Court GRANTS the Motion to Assess Attorney's Fees. Counsel for the Respondent is ORDERED to file, within fourteen (14) days, an itemization of fees and documentation supporting the amounts paid to Binary Intelligence and for travel costs.

See Order entered this date.

ENTERED: March 8, 2019

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE/4